## LAW OFFICES OF DAVID A. BRANCH, P.C.
1825 Connecticut Avenue, NW Suite 690
Washington, D.C. 20009
(202) 785-2805 ph.
(202) 785-0289 fax

June 17, 2005

**Via Fedex Overnight Delivery**
Betsey Johnson
BJ Vines Inc./Betsey Johnson
498 7th Avenue
21st Floor
New York, NY 10001

Re:    **Michelle Rosier**

Dear Ms. Johnson:

This firm has been retained by Michelle Rosier to represent her in her recent termination from employment as a manager of the Betsey Johnson store in Washington, D.C. The contents of this letter are presented for settlement purposes only and may not be used as evidence in any litigation proceedings. We will briefly review the issues identified by our client.

Ms. Rosier, an African American female, began employment with BJ Vines Inc./Betsey Johnson in December 1999. Ms. Rosier most recently held the position of manager of a retail store located in the Georgetown area of Washington, D.C. It is our understanding that she was the only African American store manager at Betsey Johnson. Throughout Ms. Rosier's tenure with Betsey Johnson, she performed at an exceptional level, and consistently met her sales goals and payroll staffing goals. Ms. Rosier was on a short list of Betsey Johnson managers who received incentives for **sales** for the months of March and April 2005. She was supervised by Jane Roser, Area Manager and Angelica Ayala, Regional Manager, both Caucasian females.

Shortly after Roser assumed the duties as area manager, she began harassing Rosier to force her to leave the Georgetown store so she could be replaced with one of her Caucasian female friends. Even though secret shoppers consistently found no problems with the condition of store and the personnel, Roser made frequent unannounced appearances at the Georgetown store and then manufactured, exaggerated and fabricated reports of the conditions and conduct of staff. She visited the Georgetown store more often than other stores in her territory.

In addition, to undermine Ms. Rosier's authority, Roser would arrive at the store and give Ms. Rosier's staff members directives which conflicted with company policy or were opposite to instructions they had received from Ms. Rosier. Further, Roser falsely

1

**EXHIBIT**

A

accused Ms. Rosier of misusing vacation time, improperly training her staff and opening the store late. Moreover, Roser disingenuously accused Ms. Rosier of being tardy to a store meeting. On this occasion, Roser scheduled a staff meeting on Sunday morning, which was Ms. Rosier's day off. Ms. Rosier inquired of Roser if it would be permissible for her to arrive later at the meeting because she attended church on Sunday. Roser indicated that it would not be a problem. On the day of the meeting, Ms. Rosier called Roser and informed her that she would be late arriving at the meeting because she had attended church service. When Ms. Rosier arrived at the agreed upon time, she was later accused of being "extremely tardy" for the staff meeting.

On May 31, 2005, Roser met with Ms. Rosier at the Betsey Johnson store in Washington, D.C. to inform Ms. Rosier of her termination, effective that day. Roser stated that Ms. Rosier was being terminated because "upper management has come to the decision that at this point a management change is necessary to keep DC store running efficiently and to increase sales." Roser claimed that "meetings have been held about the seriousness of increasing sales and being compliant. Upper management has not seen a satisfactory improvement." Finally, the termination checklist falsely indicated that efforts were undertaken to improve Ms. Rosier's performance, including a formal meeting, informal meetings, emails and site visits, and that Ms. Rosier received a disciplinary interview on March 31, 2005 and ongoing informal warnings. Ms. Rosier vehemently denies all of the above allegations and notes that Roser has no proof to substantiate any of the allegations made. Ms. Rosier acknowledges there were ongoing meetings with her and all of the store managers on increasing sales but denies any violations of company rules or regulations at the Georgetown store, or ongoing discipline to correct problems. Ms. Rosier was replaced on the day of her termination by Roser's friend, a Caucasian female. Following her termination, Roser told at least one customer that Ms. Rosier was terminated for stealing from the store. In addition, Roser contacted other African American employees who worked at the store and encouraged them to quit because of the new store manager.

We have reviewed the facts in this case and we are outraged at the blatant acts of discrimination, particularly by a company which portrays itself as embracing diversity. It is our belief that Ms. Rosier was subjected to discrimination on the basis of her race in violation of the D.C. Human Rights Act in the terms and conditions of her employment in her recent termination from employment with Betsey Johnson. There is no evidence to support any of the reasons given for termination of Ms. Rosier. Other managers have not been subjected to the treatment to which Ms. Rosier has been subjected. Ms. Rosier was terminated because Roser wanted to replace her with her Caucasian friend. In addition, Ms. Rosier has been defamed by Roser's reckless accusations that Ms. Rosier was stealing from the store.

This firm has been retained to pursue all appropriate claims on behalf of Ms. Rosier. We intend to do so. This experience has been emotionally traumatizing for Ms. Rosier and now threatens to damage her professional reputation and cause her great financial harm. We will not stand by and allow this to happen. We are prepared to move forward with litigation of this matter immediately, if necessary. We wish to bring this

matter to your attention and take this final opportunity to attempt to resolve this matter before proceeding with litigation. To bring about an amicable resolution of this matter and to avoid the cost of litigation, Ms. Rosier is prepared to accept a mutual separation from employment and release BJ Vines Inc./Betsey Johnson from all claims under the following conditions:

1. An agreement that there will be a separation from employment by mutual agreement;

2. Payment of severance pay of two hundred thousand dollars ($200,000);

3. A letter of reference from Betsey Johnson, subject to approval by counsel, stating that Ms. Rosier met her employer's expectations while employed and her separation was not based on performance;

4. An agreement that the Betsey Johnson will not challenge Ms. Rosier's claim for unemployment compensation, should it become necessary for her to file a claim; and

5. Payment of attorneys fees of $1500.

Written confirmation of an agreement to these terms will alleviate the need to pursue this matter further. Failure to agree to these terms or respond within the allotted time will leave Ms. Rosier with no choice but to pursue a civil action against Betsey Johnson and Jane Roser. If required to file a civil action, we will seek the maximum amount in compensatory and punitive damages as well as attorneys fees and costs. I can assure you that if this offer is rejected, BJ Vines Inc/Betsey Johnson and Jane Roser will be sued in the District of Columbia within a week of your rejection of this offer.

It is our hope to resolve this matter expediently and amicably. Please advise me of your position within seven (7) days so this matter can be brought to a conclusion. You may contact me or have your counsel contact me if you desire to discuss this matter in greater detail.

Sincerely,

David A. Branch

DAB/ggb
Cc:
Michelle Rosier
Jane Roser
Angelica Ayala